UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| MICHAEL ANTHONY CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 17-337-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of the Social Security | ) | **MEMORANDUM OPINION** |
| Administration, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Michael Anthony Clark and Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration. [Record Nos. 12, 14] Clark contends that the Administrative Law Judge ("ALJ") assigned to his case failed to properly consider his subjective complaints of pain and other symptoms and that the ALJ's decision is not supported by substantial evidence. The Commissioner contends that the ALJ properly evaluated the evidence of record and that the decision should be affirmed because it is supported by substantial evidence. For the reasons that follow, Clark's motion will be denied. The Commissioner's motion will be granted and the administrative decision will be affirmed.

I.     **Procedural History**

Clark filed a Title II application for a period of disability and disability insurance benefits ("DIB") on December 5, 2014, alleging an onset of disability of January 21, 2014. [Administrative Transcript; hereinafter; "Tr.," 143] After being denied initially and on

reconsideration, Clark requested a hearing. [Tr. 75, 84, 91] He appeared before ALJ Dennis Hansen at an administrative hearing on September 1, 2016. [Tr. 26-45] ALJ Hansen denied benefits in a written decision on November 2, 2016, which the Appeals Council affirmed. [Tr. 7-21, 1-6] Accordingly, the claimant has exhausted his administrative remedies and this matter is ripe for review under 42 U.S.C. § 405(g).

## II. Background

Clark was 39-years-old at the time of the ALJ's decision. [Tr. 21, 29] He has a high school diploma and has attended some college. [Tr. 29] Clark worked in underground coal mining operations from 2004 through 2012, where he ran heavy equipment and lifted up to one hundred pounds. [Tr. 30-31] He stopped working in 2012 because of back pain. [Tr. 32] According to Clark, his employer told him that he was no longer "keep[ing] up with the other men." *Id.* He reported that he had been forced to reside with his parents after the loss of his job. [Tr. 29]

Clark advised the ALJ that his most significant problems were low back pain and numbness in his left upper extremity. [Tr. 33] He stated that he was unable to hold anything and, that if he moved his neck in certain positions, it caused sharp pains to shoot down his legs. *Id.* Clark estimated that he could lift ten or fifteen pounds and that he could stand for fifteen to twenty minutes before changing positions. [Tr. 33, 37] Clark claimed that he was unable to drive due to limited neck motion. [Tr. 211] He reported taking several medications to manage his symptoms and had a history abusing pain medications. [Tr. 36] Clark advised that he had to lie down and elevate his feet to relieve his symptoms six or seven times each day. [Tr. 39]

Clark reported to Appalachian Regional Hospital ("ARH") Tri City Medical Center on January 10, 2014, where he established care with Joann Martin, APRN, as his primary care provider. [Tr. 384] He told her about his back pain and that he "got hooked on Percocet" and had been going to a Suboxone clinic for a year. *Id.* Martin referred Clark to physical therapy. [Tr. 385] He continued to follow-up with Martin, advising her in February and March 2014 that he needed a work excuse. [Tr. 392-93] Martin advised Clark in June 2014 that pharmacies had notified her that he had prescriptions for Neurontin filled by two different providers. [Tr. 406] Martin ordered a drug screen and it does not appear that Clark returned to her after that. *Id.*

Clark was involved in a motor vehicle accident on or about January 21, 2014, and was transported to ARH in Harlan, Kentucky. [Tr. 276] He reported that his car slid on ice and overturned, and he tested positive for cocaine and benzodiazepines. [Tr. 269] A CT scan of his head was normal, but a CT scan of his neck showed signs of degenerative disc disease at C5-C6, with mild encroachment of the neural foramen on bilaterally. [Tr. 270] A CT scan of Clark's left leg revealed a contusion and an x-ray of his right shoulder was largely unremarkable. [Tr. 274-75]

Clark began physical therapy treatment in February 2014. [Tr. 352] He advised his therapist that he had pain in his neck, back, right shoulder, and left Achilles region, which he rated ten-out-of-ten at worst. [Tr. 353] His gross strength was slightly diminished, particularly in the right lower extremity, and his neck range of motion was reduced. [Tr. 354-55] Clark still demonstrated strength and range of motion limitations and complained of ten out of ten pain in April 2014. [Tr. 326] A May 2014 MRI of Clark's cervical spine revealed a moderate-size central disc protrusion herniation at C5-C6. [Tr. 378] An MRI of the lumbar spine in

June 2014 indicated mild diffuse annular bulging at L2-L3 and L4-L5, but there were no signs of herniated nucleus pulposis or spinal stenosis. [Tr. 376] Finally, an MRI of Clark's shoulder in May 2014 showed mild hypertrophy of the AC joint, but no signs of a rotator cuff tear were identified. [Tr. 380]

William Rigsby, Ph.D., performed a consultative psychological examination of April 28, 2015. [Tr. 416] Clark advised Rigsby that he had experienced panic attacks and nervousness since 2010. He reported having chronic pain and participating in his sixth substance abuse treatment program. Rigsby noted that Clark related in a cooperative manner but appeared to be "from a deprived background" and was somewhat limited and below average, "but not mentally retarded." [Tr. 416] He had intact short-term and long-term memory and was able to perform simple math and reasoning. [Tr. 417]

Rigsby assigned Clark a Global Assessment of Functioning ("GAF") score of 65, but indicated that he had a moderately impaired ability to understand, retain, and follow simple instructions and to sustain concentration and persistence to complete tasks in normal time. [Tr. 419] Rigsby also indicated that Clark had marked impairment in his ability to maintain social interactions with supervisors, friends, and the public and to adapt and respond to the pressures of normal day-to-day work activity. *Id.*

Clark received an independent psychological examination from Robert Spangler, Ed. D., on November 10, 2015. [Tr. 429-35] Spangler observed that Clark had a slow, stiff gait, awkward gross motor movements, and slurred speech. [Tr. 430] He also noted that Clark was "shy, vigilant, anxious, and depressed." Clark was appropriately persistent on tasks with prompts, but his pace was impacted. He appeared to lose his balance when standing, shifted in his seat frequently, and mumbled constantly. *Id.*

Spangler reported that Clark had adequate recall of remote events, but inadequate recall of recent events. [Tr. 432] His judgment and insight were consistent with average intelligence. His stream of thought was unremarkable, his associations were logical, and his thought content was non-psychotic, but was focused entirely on his injuries and pain. [Tr. 432-33] Spangler noted that Clark interacted well during the examination, but he reported that he "stays tired" and "goes into rooms and forgets why he is in there." [Tr. 433] Spangler administered the Personality Assessment Inventory and concluded that all clinical scales were within normal parameters except anxiety, which included subscale scores confirming Clark's diagnoses of major depressive disorder, generalized anxiety disorder, and being "an individual with drug dependence who is in treatment and . . . who acknowledges the need to make changes . . . and accepts personal responsibility." [Tr. 434]

ALJ Hansen determined that Clark did not have an impairment or combination of impairments that met a listing under 20 C.F.R. Part 404, Subpart P, Appendix 1. However, he concluded that Clark had the following severe impairments: degenerative disc disease of the lumbar and cervical spine; affective disorder; anxiety disorder; and personality disorder. [Tr. 12] After considering the entire record, the ALJ found that Clark had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except he was limited to

> occasionally climbing ramps or stairs, and occasionally stooping, kneeling, crouching and crawling. He can never climb ladders, ropes, or scaffolds, and never be exposed to unprotected heights, dangerous moving machinery, or operate motor vehicles at work. The claimant is limited to occasionally reaching overhead. He can understand and remember simple instructions and can sustain attention and concentration to complete simple tasks with regular breaks every two hours. He can occasionally interact with supervisors, coworkers, and the public. He can adapt to routine work conditions and occasional work changes that are gradually introduced.

[Tr. 15]

Based on the above-referenced RFC, the ALJ determined that there were jobs existing in significant numbers in the national economy that Clark was capable of performing. [Tr. 19] Accordingly, he concluded that he was not disabled under the Act. [Tr. 20]

### III. Standard of Review

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, the claimant must show that he suffers from a severe impairment or a combination of impairments. 20 C.F.R. § 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based

on medical evaluations and current work activity, the Commissioner will review the claimant's residual functional activity ("RFC") and relevant past work to determine whether he can perform her past work. If he can, he is not disabled. 20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairments prevent him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

A court reviewing a denial of Social Security benefits must only determine whether the ALJ's findings were supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### IV.    Analysis

#### A.    The ALJ's Evaluation of Clark's Subjective Complaints

Clark contends that the ALJ did not apply proper legal standards in assessing his subjective complaints of pain and mental limitations. [Record No. 12-1, pp. 11-13] Specifically, he alleges that the ALJ did not assess his credibility as required by SSR 96-7p,

1996 WL 374186 (July 2, 1996). Counsel for Clark made a similar argument in London Civil Action 6:17-241, *Brock v. Commissioner of Social Security*. The Court issued an Memorandum Opinion and Order in that case on April 6, 2018, explaining that SSR 96-7p was superseded by SSR 16-3p, 2016 WL 1237954 (March 24, 2016), which eliminated use of the term "credibility." *See, e.g., Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (explaining that ALJ still must consider possible reasons why a claimant failed to seek medical treatment consistent with degree of complaints).

Regardless, it is clear that the ALJ applied the appropriate two-step inquiry for evaluating Clark's subjective complaints of pain and psychological limitations. *See* 20 C.F.R. § 404.1529; SSR 16-3p. The ALJ first determined that Clark had medically determinable impairments that could reasonably be expected to cause the symptoms he alleged. *See* 20 C.F.R. § 404.1529(b); 2017 WL 5180304. Specifically, he concluded that Clark had a history of degenerative disc disease, anxiety, and personality disorder. [Tr. 16] The ALJ determined that Clark's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. *Id.*

ALJ Hansen discussrf the relevant objective medical evidence and why it did not support the limitations that Clark alleged. Diagnostic imaging revealed relatively mild findings in the cervical and lumbar spine, as described in the ALJ's opinion. [Tr. 16] Physical therapy examinations indicated that Clark had almost full strength in the lower extremities, no neurological deficits, and a normal gait. *Id.* Despite Clark's psychological impairments, he was routinely observed throughout 2014 with a normal mood, intact memory, and normal interpersonal interactions. As the ALJ pointed out, the record lacked evidence of any

significant treatment for mental health, except a brief period of counseling in 2015. [Tr. 422-26]

To the extent Clark's statements regarding the limiting effects of his pain and psychological symptoms were not substantiated by objective medical evidence, the ALJ was required to consider other evidence in the record to determine whether Clark's symptoms limited his ability to perform work-related activities. *See* 20 C.F.R. § 404.1529(c)(3). The ALJ looked at factors including Clark's activities of daily living; the location, duration, frequency, and intensity of his pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medications taken to alleviate the pain; treatment, other than medication, for relief of pain or other symptoms; and any other factors concerning functional limitations and restrictions due to pain or other symptoms produced by medically determinable impairments. *See* 2017 WL 5180304, at *7-8.

The ALJ noted that Clark reported being able to drive, talk on the telephone, shop, and sometimes attend his child's ball games. [Tr. 14, 418] Despite complaints of "ten out of ten" pain, Clark experienced improvement of his symptoms with a regimen of Neurontin, muscle relaxers, and Tylenol. [Tr. 16] Further, he received only conservative treatment and surgical intervention was never suggested. The ALJ recognized that Clark was prescribed Klonopin, which can cause sedation, and took this into account when determining the RFC. [Tr. 17] The ALJ also believed that Clark's assertions were undermined by evidence including: obtaining Neurontin prescriptions from multiple providers and testing positive for non-prescribed benzodiazepines in 2015. [Tr. 17]

        **B.**      **Substantial Evidence Supports the Commissioner's Decision**

Clark contends that the ALJ's decision that he is not disabled is not supported by substantial evidence. His argument focuses on MRIs that reveal some degree of degeneration in his spine and shoulder. And he contends that his complaints of pain are "uncontradicted in the record." [Record No. 12-1, p. 10] Clark also appears to argue that the ALJ did not give appropriate consideration to Robert Spangler's opinion regarding Clark's psychological limitations. *Id.* at pp. 10-11.

Spangler was a one-time consulting source and, accordingly, his opinion was not entitled to any particular weight. Instead, his opinion was afforded weight in accordance with the factors set out in 20 C.F.R. § 404.1527(c). These factors include: whether the opinion is supported by objective findings; whether it is consistent with the record as a whole; and the extent of the source's relationship with the claimant. *Id.* The ALJ assigned only partial weight to Spangler's opinion, noting that Spangler had only examined Clark on a single occasion. [Tr. 19] Further, Spangler's findings were internally inconsistent and inconsistent with the weight of the evidence in several respects. For example, Spangler concluded that Clark had adequate recall of remote events, but diagnosed him with "long term memory impairment." *Id.* Additionally, Spangler failed to acknowledge that Clark's benzodiazepine abuse may have contributed to his slurred speech and diminished balance. *Id.*

Contrary to Clark's suggestion, his MRI results and subjective complaints of pain do not compel a determination of disability. Instead, this Court must view the record and determine whether substantial evidence supports the Commissioner's determination, even if the Court would reach a different conclusion. No treating source offered an opinion regarding Clark's physical or mental RFC. However, in determining the physical portion of the RFC, the ALJ considered treatment notes from Clark's healthcare providers, a statement from

Clark's mother, and reports from state agency medical consultants. Donna Sadler, M.D, reviewed Clark's file on July 20, 2015, and determined that he had the capacity to occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds. [Tr. 68-69] Sadler opined that Clark could stand and/or walk and sit for approximately six hours in an eight-hour workday and that he had an unlimited ability to push and or pull, other than the restrictions already noted. [Tr. 69] Additionally, she reported that he could occasionally climb ramps, stairs, ladders, ropes, and scaffolds and he could frequently stoop, kneel, crouch, and crawl. *Id.* Sadler noted specifically that these limitations were assessed based on "herniated disc" and that "pain ha[d] been considered." *Id.*

The ALJ assigned partial weight to Sadler's opinion. [Tr. 18] Although her opinion was generally consistent with the evidence at the time of her review, it did not account for Clark's use of Klonopin and was somewhat inconsistent with his "moderate" disc bulge at C5-C6. *Id.* The ALJ also accounted for some of Clark's subjective complaints by crafting an RFC permitting light work with some postural limitations. The environmental limitations also are supported by Clark's use of Klonopin, which the record indicates can cause drowsiness.

The mental portion of the RFC also is supported by substantial evidence. Michelle Bornstein, Psy.D., reviewed Clark's case in May 2015 and provided a psychological RFC. [Tr. 54-56] Bornstein concluded that Clark could understand and remember simple instructions requiring a short initial learning period and that he could sustain attention and concentration for simple tasks. [Tr. 55] She further reported that he could interact occasionally as needed with supervisors, peers, and the public, without the need for special supervision. *Id.*

Lea Perritt, Ph.D., reviewed Clark's file in July 2015, and echoed Bornstein's findings. [Tr. 72] Perritt remarked that Rigby's opinion was an overestimate of the severity of Clark's

limitations and was based on a snapshot of his functioning. [Tr. 73] The ALJ assigned "great weight" to the opinions of Bornstein and Perritt, concluding that they were consistent with the evidence as a whole. Specifically, Clark's treating sources consistently observed him exhibiting a normal mood and affect. Further, both consultative examiners noted that Clark performed simple tasks and interacted appropriately. [Tr. 18]

V. *Conclusion*

Based on the foregoing analysis, it is hereby

**ORDERED** as follows:

1. Plaintiff Michael Anthony Clark's Motion for Summary Judgment [Record No. 12] is **DENIED**.

2. Defendant Acting Commissioner of the Social Security Administration Nancy A. Berryhill's Motion for Summary Judgment [Record No. 14] is **GRANTED**.

3. The administrative decision will be **AFFIRMED** by separate Judgment entered this date.

This 23rd day of May, 2018.



Signed By:
*Danny C. Reeves* DCR
United States District Judge